## THE RICHARD PECK.

MYERS EXCURSION & NAV. CO. v. THE RICHARD PECK.

(District Court, E. D. New York. April 26, 1894.)

COLLISION—STEAM VESSELS CROSSING—ATTEMPT TO CROSS BOWS.

Two tugs, towing a bark, came down the East river, bound west, and in the neighborhood of Corlaer's Hook began to pull towards the New York shore. The steamboat R. P., having the tow in full view, attempted to cross its bow, despite opposing signals from the tugs, with which she thereafter collided. *Held*, that such attempt to cross the bows of the tugs was at the risk of the steamboat, and if, as she contended, the length of the tow made it impossible for her to go under its stern, then it was her duty to have stopped, instead of keeping on; and that the steamboat was solely liable for the collision.

Libel by the Myers Excursion & Navigation Company for damages for collision between the steamboat Richard Peck and two tugboats, Charles Allen and Robert Haddon, owned by the libelant.

Wing, Shoudy & Putnam, for libelant.

William J. Kelly, for claimant.

BENEDICT, District Judge. This is an action to recover damages sustained by the libelant in a collision which occurred in the

East river on January 10, 1893, wherein the tugboat Charles Allen, owned by the libelant, was cut in two by the steamboat Richard Peck, and the bow of the tugboat Robert Haddon, also owned by the libelant, was taken off by the Peck's guards. The collision occurred at about 3 o'clock in the afternoon, in broad daylight and clear weather, at a point below Corlaer's Hook in the East river. The Peck was bound to the eastward; the Allen was bound to the westward, having behind the tugboat Robert Haddon, both towing at the time the bark Hannah Blanchard. The Richard Peck (with this tandem tow in full view, which, at the time, by an exchange of single blasts with the tug Jamestown, going up the river ahead of the Peck, was committed to a course crossing the channel to the New York shore) undertook to cross the bows of the Allen, intending to pass ahead of the tow, in order to round the Hook on the New York side of the river. While the tug Allen was so crossing the river, in accordance with the whistles exchanged between the Allen and the Jamestown, the Peck blew a signal of two whistles to the Allen, "to give her plenty of time," as the captain says; and, although no reply was received to this whistle, the Peck kept on, and gave a second signal of two blasts, to which a signal of one whistle was received in reply, notwithstanding which the Peck persisted in her attempt to cross the Allen's bows, sheering all the time still further to the west, until the vessels came in collision. The fact that the tow had taken a course to cross the river in plain view of the Peck, and before any signals were given by the Peck, is made plain by the testimony of the master of the Jamestown, who was ahead of the Peck, and who says that he blew one whistle to the Allen, and she replied with one whistle, and at that time began to haul towards the New York shore, at which time, as he says, the Peck was coming out of her slip, sounding her alarm whistle.

In my opinion, it was a fault on the part of the Peck to attempt to gain the New York shore by passing ahead of the tow. The tow had the right to take a course to cross the river so as to come down on the New York shore below the Hook, and, when the Peck attempted to cross the bows of the tow while on that course, it was at her own risk. If, as she contends, the length of the tow made it impossible for her to go under the stern of the tow, then it was her duty to stop, instead of which she kept on in a vain and dangerous effort to cross ahead of the tow. I find no fault on the part of the Charles Allen. There must be a decree in favor of the libelant, with an order of reference to ascertain the damages.